1

2

3

4

5                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
6                                   AT SEATTLE

7
    ROBERT E. NESBITT,
8                                                  No.  C11-2117RSL
                      Plaintiff,
9        v.                                        ORDER GRANTING
                                                   DEFENDANT'S MOTION FOR
10   PROGRESSIVE NORTHWESTERN                       SUMMARY JUDGMENT
    INSURANCE COMPANY,
11
                      Defendant.
12

13        This matter comes before the Court on Defendant's motion for partial summary

14  judgment (Dkt. # 10).  Defendant asks the Court to find as a matter of law that Plaintiff

15  was not entitled to "stack" his personal injury ("PIP") or underinsured motorist ("UIM")

16  coverage under the terms of his contract and that he therefore lacks a contractual claim.

17  The Court GRANTS the motion.

                                  **I. BACKGROUND**
18
          This case concerns a dispute over insurance coverage.  The relevant, material
19
    facts are entirely undisputed.[1]
20
          Plaintiff is a Washington resident.  Dkt. # 1 at 10 ¶ 2.1.  He owns two vehicles, a
21
    1987 Mercedes-Benz and a 1995 Mitsubishi—both of which are insured by Defendant
22

23
          [1]  Plaintiff "concede[d], for the purpose of this summary judgment motion only, most of
24  the factual allegations set forth in Progressive's motion," except for "any allegation or assertion
    that states or implies, that in paying the $10,000 in PIP coverage and $25,000 in UIM coverage
25  under Mercedes-Benzs policy, [Progressive] discharged Progressive's contractual obligations
    under the policy it issued on the Mitsubishi Montero."  Resp. (Dkt. # 20) at 2.
26
    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

under a common policy. Id. at 10 ¶ 3.2; Dkt. # 11 at 5–6 (Policy Declarations Page). The policy contains a PIP coverage limit of $10,000 and a UIM coverage limit of "$25,000 each person/$50,000 each accident." Dkt. # 11 at 5–6.

The incident giving rise to this claim occurred on July 15, 2010. Plaintiff was standing in the street in front of his home washing his vehicles. Mot. (Dkt. # 10) at 2. As he was crossing in front of his Mercedes, another driver suddenly crashed into the Mitsubishi from behind, propelling it forward into the rear of the Mercedes. Id. As it was struck by the Mitsubishi, the Mercedes shot forward, striking the Plaintiff. Id. Plaintiff suffered serious injuries. See Dkt. # 1 at 11 ¶¶ 3.4–3.5.

Subsequently, Plaintiff reported the claim to Defendant. Mot. (Dkt. # 10) at 3. Defendant paid him $6,643.29 to settle his property damage claim and offered to pay him $10,000 in PIP coverage and $25,000 in UIM coverage, explaining that these were the applicable liability limits under the policy. Id. Plaintiff disagreed. Id. at 2 n.2. He argued that because two of his vehicles had been involved in the accident, that he should have been entitled to $35,000 in coverage from each. Resp. (Dkt. # 20) at 2 ¶ 3.2. He filed suit in King County Superior Court, alleging that Defendant had improperly refused to pay the additional $35,000 in PIP and UIM coverage he believes he is entitled and requesting treble damages and attorney's fees under Washington's Insurer Fair Conduct Act, RCW 48.30.015, and Consumer Protection Act, RCW 19.86.090. Dkt. # 1 at 15 ¶¶ 4.2–4.3. Defendant timely removed, and the Court has since denied Plaintiff's motion to remand for lack of diversity jurisdiction. Order (Dkt. # 26).

## II. DISCUSSION

Defendant's motion is relatively simple. It notes that insurance policies are construed as contracts in Washington and that the interpretation of an insurance policy is a pure question of law. E.g., Overton v. Consolidated Ins. Co., 145 Wn.2d 417, 424 (2002). It argues that because the terms of Plaintiff's policy plainly preclude the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

additional coverage he seeks, and because the underlying facts are undisputed, it is entitled to judgment as a matter of law in its favor as to Plaintiff's contractual claims.

Plaintiff raises four arguments in response. Resp. (Dkt. # 20) at 1 ¶ 1. First, he contends that the Court should grant his motion to remand and deny this motion as moot. For obvious reasons, this contention is unavailing. Order (Dkt. # 26) (denying motion to remand). Second, he argues that the motion should be struck until after "Progressive provides answers and responses to Nesbitt's discovery requests." Resp. (Dkt. # 20) at 1–2 ¶ 1. This argument is also unpersuasive. The issue of policy interpretation before the Court is purely a question of law, and Plaintiff has already conceded to the veracity of the only facts relevant to the application of those terms.[2]

Third, Plaintiff asks the Court to stay the motion and certify to the Washington Supreme Court the issue of whether Washington's "antistacking" laws are applicable when two insured vehicles are involved in an accident. And fourth, he argues that neither Washington law nor the policy terms support Defendant's position because none address a case in which more than one of the insured's vehicles were involved in a single accident. The Court considers each of these more tenable contentions in turn.

**A. The Merits**

The Court starts with the merits: whether Plaintiff is entitled to greater coverage under the terms of the policy and, if not, whether the pertinent contractual limits are void as against Washington public policy.

Notably, because this matter comes before the Court on Defendant's motion for summary judgment, the Court may grant Defendant's motion only if it is satisfied that there is no genuine issue of material fact and that judgment is appropriate as a matter of

---

[2] The Court would also note that Defendant was right to object to Plaintiff's requests. Federal Rule of Civil Procedure 33(a) plainly states that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Nevertheless, Plaintiff served 31, many of which contained multiple subparts. And, upon being informed by Defendant's counsel of this shortcoming and Defendant's intent to answer only the first 25 interrogatories, Dkt. # 24-2, Plaintiff did nothing to remedy his error.

law.  Fed. R. Civ. P. 56(c).  As the moving party, Defendant bears the initial burden of informing the Court of the basis for summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It must prove each and every element of its claims or defenses such that no reasonable jury could find otherwise.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In doing so, it may rely on nothing more than the pleading themselves.  Celotex, 477 U.S. at 322–24.  If it makes that showing, the burden then shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because a genuine issue of material fact exists.  Id. at 324.

Fortunately, this inquiry is somewhat abbreviated in this case.  The facts are undisputed.  Thus, "this case depends [only] on a proper interpretation of the insurance polic[y]" at issue—a pure question of law.  Cf. Overton, 145 Wn.2d at 424.  The Court need only consider the policy "as a whole" and accord its terms "a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'"  Id. (citation omitted); accord Nat'l Sur. Corp. v. Immunex Corp., 162 Wn. App. 762, 771 (2011).  "[I]it should be given a 'practical and reasonable rather than a literal interpretation'"—"not a 'strained or forced construction' leading to absurd results."  Eurick v. Pemco Ins. Co., 108 Wn.2d 338, 341 (1987).  And "if the policy language is clear and unambiguous," the Court "must enforce it as written; [it] may not modify it or create ambiguity where none exists."  Immunex, 162 Wn. App. at 771.

With these standards in mind, the Court turns to the policy itself to determine whether its provisions concerning UIM and PIP coverage limit Plaintiff's coverage as Defendant contends.  Assuming they do, the Court also considers whether either restriction is void as against Washington policy.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

**1. Underinsured Motorist Coverage**

**a. The Terms**

In regard to the UIM provisions, the Court finds that the policy clearly limits

Plaintiff to a single per-person limit of $25,000.

The relevant policy terms state:

**PART III - UNDERINSURED MOTORIST COVERAGE**

**INSURING AGREEMENT - UNDERINSURED MOTORIST BODILY INJURY COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for damages
that an insured person is legally entitled to recover from the owner or
operator of an underinsured motor vehicle because of bodily injury:
1.      sustained by that **insured person**;
2.      caused by an **accident**; and
3.      arising out of the ownership, maintenance, or use of an
        **underinsured motor vehicle**.

\* \* \*

LIMITS OF LIABILITY
The limit of liability shown on the **declarations page** for
Underinsured Motorist Coverage is the most **we** will pay regardless
of the number of:
1.      claims made;
2.      **covered autos**;
3.      **insured persons**;
4.      lawsuits brought;
5.      vehicles involved in the **accident**; or
6.      premiums paid.

If **your declarations page** shows a split limit:
1.      the amount shown for "each person" is the most **we** will pay
        for all damages due to **bodily injury** to one person;
2.      subject to the "each person" limit, the amount shown for
        "each accident" is the most **we** will pay for all damages due to
        **bodily injury** sustained by two or more persons in any one
        **accident**; and
3.      any amount shown for **property damage** is the most **we** will
        pay for the aggregate of all **property damage** caused by any
        one **accident**.

\* \* \*

> If multiple auto policies issued by **us** are in effect for **you**, **we** will
> pay no more than the highest limit of liability for this coverage
> available under any one policy.

Dkt. # 11 at 20, 22–24 (emphasis in original).[3]

These terms speak for themselves. First, they explain specifically that the "each accident" liability limit is subject to the "each person" limit and that "the amount shown for 'each person' is the most [Defendant] will pay for <u>all damages due to **bodily injury to one person**</u>." <u>Id.</u> at 22–23 (some emphasis added). Accordingly, there can be no argument that Plaintiff is entitled his "each accident" limit of $50,000.

Furthermore, the terms go on to provide that "[t]he limit of liability shown on the declarations page for Underinsured Motorist Coverage is the most we will pay <u>regardless of the number of . . . **covered autos**; . . . vehicles involved in the **accident**; or premiums paid</u>." <u>Id.</u> at 20 (some emphasis added). Even standing alone, this provision can only be interpreted to mean that Plaintiff's "each person" limit continues to apply even if, as here, more than one of his vehicles is involved in a single accident.[4] <u>See</u> <u>Overton</u>, 145 Wn.2d at 424; <u>Rodenbough v. Grange Ins. Ass'n</u>, 33 Wn. App. 137, 138–41 (1982) (finding that similar policy language unambiguously precluded stacking of PIP coverage). And, importantly, when the policy is read "as a whole," this plain understanding is only further buttressed by the following terms: "If multiple auto

---

[3] Each bolded word is a defined term under the policy.

[4] The Court notes that Plaintiff does not contend that the incident in question amounted to more than one accident. Nor could he. As the Washington Supreme Court explained in <u>Truck Ins. Exchange v. Rohde</u>, the ordinary understanding of the term "accident" in an insurance contract is that it includes "all injuries or damage within the scope of the single proximate cause." 49 Wn.2d 465, 471 (1956). Thus, even if, as in <u>Rohde</u>, three separate collisions occurred, those collisions are all part of a single accident if "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." <u>Id.</u> Indisputably, the three collisions in this case were all the result of a single "proximate, uninterrupted, and continuing cause." <u>Id.</u> ("The stipulated facts establish that, as a direct result of the insured's negligence, his vehicle went out of control, either before or simultaneously with the first collision, and that it remained out of control until it came to rest after the third collision.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy." Dkt. # 11 at 24. This language clearly forecloses the strained interpretation Plaintiff advocates.

In sum, "the policy language is clear and unambiguous." Immunex, 162 Wn. App. at 771. Per the UIM terms, Plaintiff is entitled to coverage under no more than a single $25,000 "each person" limit.

### b. Public Policy

Having established that the policy terms are of no benefit to Plaintiff, the Court moves on to his argument that those terms are void as against public policy. It finds that they are not.

Notably, a line of Washington case law directly supports Plaintiff's view. In Cammel v. State Farm Mutual Automobile Insurance Co., two insureds had obtained individual insurance policies for three vehicle. 86 Wn.2d 264, 265 (1975), overruled by statute as stated in Millers Cas. Ins. Co. v. Briggs, 100 Wn.2d 1, 4 (1983). Each policy provided for UIM coverage of $15,000 per person and $30,000 per accident—the minimum amounts required by statute. Id. Nevertheless, when an accident occurred, the insurer refused to pay more than $30,000, relying on a pro rata clause nearly identical to the one in Plaintiff's policy—"if the Insured has other similar insurance available to him against a loss covered by this coverage, then the damage shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance." Id. at 265–66.

The court did not take kindly to this clause. It agreed with the plaintiff that "(1) the . . . clause ha[d] the effect of reducing the minimum uninsured motorist coverage required in each policy by RCW 48.22.030 and RCW 46.29.490, and (2) that a construction of the three policies which reduces recovery to no more than what the insured would have obtained under one policy is unreasonable when a separate premium has been paid and accepted by the insurer for each policy." Id. at 266; accord id. at

270–71 ("If, in paying one premium for a single automobile, coverage is purchased while occupying the insured automobile along with the coverage not tied to that automobile, the question might well be asked, What coverage is intended by payment . . . for a second automobile?" (citation omitted))  Accordingly, it found the policy provision to be "invalid and ineffective," id. at 267, ruling that the insurer was liable for the stacked coverage amount of $90,000, see id. at 271.

The Washington Supreme Court reaffirmed this principle in Federated American Insurance Co. v. Raynes. 88 Wn.2d 439, 444–45 (1977).  More importantly, it extended Cammel's rationale to cases in which multiple "cars are insured under one single policy." Id. at 447–48.  Noting that the statutory requirement of minimal coverage remained the same regardless of whether an individual "insured his two cars under two separate policies" or insured "his two cars . . . under one single policy," id. at 447, the court held that "the number of uninsured motorist coverages on which an insured is entitled to rely is determined by the number of premiums paid and not by the number of policies under which the cars are insured." Id. at 448; accord Am. States Ins. Co. v. Milton, 89 Wn.2d 501, 504 (1978) ("Here, the insured paid nine premiums for uninsured motorist protection.  Thus, appellant is entitled to maximum protection in the amount of $135,000, or nine times the stated policy amount of $15,000.").

Unfortunately for Plaintiff, the perfect applicability of these cases to his situation actually hurts his cause.  As he concedes, the Washington Legislature amended RCW 48.22.030 in 1980 for the express purpose of overruling Cammel and its progeny. Greengo v. Pub. Emps. Mut. Ins. Co., 135 Wn.2d 799, 808–09 (1998) ("However, in 1980 the Legislature overruled Cammel by statutory amendment . . . .").  Specifically, the Legislature amended RCW 48.22.030 to allow insurers to include the very stacking limitations the court held invalid:

> (5) The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

(6) The policy may provide that if an injured person has other similar insurance available to him or her under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

Moreover, in subsequent cases the Washington Supreme Court interpreted these provisions broadly. It found that they permitted the exclusion of both "internal anti-stacking limitations," which it described as "the adding together of various coverages within a single policy in order to increase coverage limits," and "external anti-stacking limitations," which it described as "the practice of adding together different policy coverages to increase available coverage limits." Greengo, 135 Wn.2d at 807–08; see also Safeco Corp. v. Kuhlman, 47 Wn. App. 662, 664 (1987) ("RCW 48.22.030(5) and (6) allow insurers now to include provisions limiting coverage for liability for one accident and preventing an insured person from stacking coverages for multiple automobile policies . . . ."). And it noted that the Legislature had altered Washington's public policy toward UIM coverage from one of ensuring "full compensation" to something far less substantial—the "creation of a second layer of floating protection for the insured." Greengo, 135 Wn.2d at 808, 810. As a result, the court noted that, since the amendment, it had "repeatedly upheld UIM exclusions that are not expressly authorized by the UIM statute." Id. at 808 n.2.

These amendments and the court's subsequent rulings are fatal to Plaintiff's UIM claim. Defendant's policy terms mirror the language of RCW 48.22.030(5) and (6). And the Washington Supreme Court has made clear that this language precludes both internal stacking and external stacking of UIM coverage. E.g., Greengo, 135 Wn.2d at 807–08. Thus, regardless of the fact that both of his vehicles were involved in the accident, his claims are precluded by the plain terms of the policy—terms broadly and interpreted and expressly blessed by the Washington Supreme Court.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

**1. Personal Injury Protection Coverage**

    **a. The Terms**

As with the UIM provisions, the Court finds that the policy limits Plaintiff to a single per-person PIP limit of $10,000 for medical and hospital benefits.

The relevant policy terms state:

**PART II - PERSONAL INJURY PROTECTION COVERAGE**

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Personal Injury Protection Coverage, **we** will pay the following benefits to or on behalf of an **insured person** for losses or expenses incurred because of **bodily injury** sustained by an **insured person** caused by an accident and arising out of the ownership, operation, maintenance, or use of an **automobile**:
1.    **medical and hospital benefits**;
2.    **income continuation benefits** to or on behalf of each **insured person** engaged in a remunerative occupation at the time of the accident;
3.    **funeral expenses**; and
4.    **loss of services benefits**.

\* \* \*

**LIMITS OF LIABILITY**

The Limits of Liability for losses or expenses incurred by or on behalf of one **insured person** because of **bodily injury** sustained in any one accident will be as follows:
1.    $10,000 for **medical and hospital benefits**;
2.    $10,000 for **income continuation benefits**, subject to a limit of $200 per week. However, the combined weekly payment an insured person may receive under personal injury protection coverage, workers' compensation, disability insurance, or other income continuation benefits may not exceed 85% of the insured person's weekly income at the time of the accident;
3.    $2,000 for funeral expenses; and
4.    $5,000 for loss of services benefits subject to a limit of $40 per day, not to exceed $200 per week.

\* \* \*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

The Limits of Liability are the most **we** will pay for all losses and expenses incurred because of **bodily injury** to one **insured person** sustained in one accident, regardless of the number of:
1.    claims made;
2.    **covered autos**;
3.    **insured persons**;
4.    lawsuits brought;
5.    **automobiles** involved in an accident; or
6.    premiums paid.

Dkt. # 11 at 16–19 (bolded emphasis in original).

Again, the Court finds that these terms speak for themselves. As before, the limitation of liability provisions plainly limit Plaintiff to a single recovery of the described amounts "regardless of the number of . . . **covered autos**; . . . vehicles involved in the **accident**; or premiums paid." Id. at 19 (some emphasis added); see Rodenbough, 33 Wn. App. at 138–41 (finding that similar terms precluded stacking).

### b. Public Policy

Again, having found that the terms refute Plaintiff's position, the Court considers whether those terms are invalid as against Washington policy. It finds that they are not.

The Washington courts have already resolved this very question. In Rodenbough, for example, the precise question before the court was whether PIP anti-stacking provisions of a nearly identical nature were void as against public policy for the reasons expressed by the Washington Supreme Court in Cammel and its progeny. Rodenbough, 33 Wn. App. at 139. The court found that they were not, stating:

> We do not find the reasons for combining uninsured motorist coverage applicable here. By statute[,] minimum uninsured motorist coverage must be included in every automobile insurance policy, RCW 48.22.030, and no policy shall contain any provision inconsistent with the statute. RCW 48.18.130. Because of this statutory mandate, our courts have combined uninsured motorist coverage in policies insuring several automobiles for one insured. Federated Am. Ins. Co. v. Raynes, supra; Cammel v. State Farm Mut. Auto. Ins. Co., 86 Wash. 2d 264, 543 P.2d 634 (1975). PIP coverage is not mandated by statute; it is a matter of contract. Hence, the policy considerations underlying the combining or "stacking" of uninsured motorist coverage are not applicable here.

Id. at 139.

The Court sees no reason why this plain edict should not control. Notably, while Plaintiff is correct that the Washington Legislature began requiring Washington insurers to offer "personal injury protection coverage . . . as an optional coverage" in 2003, RCW 48.22.085, this requirement is quite distinct from that expressed in the pre-1980 version of RCW 48.22.030 relied upon in Cammel. Unlike that statute, RCW 48.22.085 does not require insureds to maintain a minimum level of PIP coverage; it merely requires insurers to offer minimum levels of PIP coverage. See also RCW 48.22.095 (specifying the minimum coverage that must be offered). This critical difference distinguishes the first basis relied upon by the Cammel court: that "the . . . clause ha[d] the effect of reducing the minimum uninsured motorist coverage required in each policy by RCW 48.22.030 and RCW 46.29.490." 86 Wn.2d at 266 (emphasis added).

Moreover, Rodenbough itself distinguished Cammel's second basis: "that a construction of the three policies which reduces recovery to no more than what the insured would have obtained under one policy is unreasonable when a separate premium has been paid and accepted by the insurer for each policy." Cammel, 86 Wn.2d at 266. It held: "It is argued we should allow 'stacking' of PIP coverage because the insured paid six premiums; and, if we do not do so, it will result in a windfall to the company. We disagree. This court is not authorized to rewrite the contract; our task is to construe it." Rodenbough, 33 Wn. App. at 139. Thus, while this Court may not have dismissed so readily Cammel's concern for insureds being "left in the position of having paid for coverage they do not receive dismissed," 86 Wn.2d at 270, in this context, Rodenbough did. And its decision on the matter is both binding on this Court and dispositive.

**B. Certification**

Finally, the Court considers whether any of these issues of Washington state law should be certified to the Washington Supreme Court. It finds no reason to do so.

RCW 2.60.026 provides:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

Thus, at a minimum, there must be some issue of state law left unclear before certification becomes appropriate. Id.

Moreover, the Court notes that "[u]se of the certification procedure in any given case 'rests in the sound discretion of the federal court.'" Micomonaco v. State of Wash., 45 F.3d 316, 322 (9th Cir. 1995) (quoting Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)). "Certification is not appropriate where the state court is in no better position than the federal court to" resolve the issue. Id.

Applying these principles to the facts of this case, the Court sees no reason to certify. The fact that the precise factual situation present here—one accident involving two covered vehicles—is not replicated in any of the state authorities cited by the parties, does not negate the fact that the broad principles expressed in those case clearly apply. Nor does it negate the fact that those principles clearly resolve the arguments at hand.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS Defendant's motion (Dkt. # 10). Plaintiff's contract-based claims are precluded by the plain terms of his policy, and neither Washington law nor its public policy preclude their application.

.

DATED this 25th day of May, 2012.

Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13